J-S14035-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SIDDIQ SHELTON | : | |
| | : | |
| Appellant | : | No. 2546 EDA 2024 |

Appeal from the PCRA Order Entered September 13, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0013343-2014

BEFORE:   DUBOW, J., BECK, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED JUNE 2, 2025**

Appellant, Siddiq Shelton, appeals from the order entered by the Court of Common Pleas of Philadelphia County dismissing as untimely his petition under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. We affirm.

In this Court's 2021 memorandum decision affirming the PCRA court order dismissing Appellant's first PCRA petition, we summarized the facts and procedural history as follows:

> On July 28, 2014, the decedent, Elisha Bull [("Bull")], along with Shantee Porter [("Shantee")], Francheska Quinones [("Quinones")], Tatiyana Porter [("Tatiyana")], Michel Benjamin [("Benjamin")], Tynisha Moore, and an eight[-]month[-]old baby were hanging out on the porch of 4902 North Front Street in Philadelphia, Pennsylvania. At approximately 12:19 a.m., [Shelton] and an unknown male approached the porch and began shooting at the individuals on the porch. After shooting ... at least

---

[*] Former Justice specially assigned to the Superior Court.

15 times, [Shelton and the unknown male] fled. Quinones was shot once in the thigh. Tatiyana [ ] was shot in her arm and her ankle. Benjamin was shot in his thigh. Bull was shot a total of [six] times[:] twice in the head, once in the collarbone, once in the chest, once in the left wrist, and once in the right ankle. All four individuals were rushed to the Temple Hospital. Bull was pronounced dead shortly thereafter. The medical examiner determined that the cause of death was from multiple gunshot wounds.

Following the shooting, the police recovered surveillance footage of the shooting. They also conducted multiple interviews of the surviving victims. Quinones identified [Shelton] as one of the shooters from a photo array. Benjamin also implicated [Shelton] as one of the shooters. Tatiyana [ ] selected two individuals from a photo array, one of whom was [Shelton], and stated that the shooter was one of th[e] two individuals [that she identified]. Finally, while Shantee [ ] was preparing for trial with Detective Laura Hammond [("Detective Hammond")] on September 12, 2016, just days before trial commenced, she told Detective Hammond that Benjamin had told her that [Shelton] was one of the shooters.

On September 21, 2016, after a jury trial, Shelton was found guilty of first-degree murder and related offenses. Shelton subsequently entered into a sentencing agreement with the Commonwealth, wherein Shelton agreed to waive his direct appeal rights in exchange for a life sentence in lieu of the death penalty. The trial court sentenced Shelton, in accordance with the sentencing agreement, to an aggregate term of life plus 72 to 144 years in prison.

On August 15, 2017, Shelton filed a timely, *pro se*, [first] PCRA Petition. The PCRA court appointed counsel. On February 28, 2019, after a change in counsel, PCRA counsel filed an Amended PCRA Petition. In the Amended Petition, Shelton alleged, *inter alia*, that he is entitled to a new trial based upon after-discovered evidence of Detective James Pitts's ("Detective Pitts") habit and routine of coercing witnesses into signing false statements.

On February 28, 2020, the PCRA court filed a Pa.R.Crim.P. 907 Notice of Intent to Dismiss Shelton's Petition without a hearing. On July 7, 2020, the PCRA court dismissed Shelton's PCRA Petition. Shelton filed a timely Notice of Appeal and a court-

ordered Pa.R.A.P. 1925(b) Concise Statement of errors complained of on appeal.

***Commonwealth v. Shelton***, 253 A.3d 294, at *1 (non-precedential decision) (Pa. Super. 2021). On October 5, 2021, the Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal.

On April 6, 2023, Appellant filed a counseled, second PCRA petition ("Second Petition"), which is here at issue. As the PCRA court explains,

On February 28, 2024, Appellant filed, as exhibits, statements taken from various Commonwealth witnesses to supplement his Second Petition [that asserted the Commonwealth improperly denied Appellant his due process rights to a fair trial when it suppressed materials related to misconduct committed by former Detective Pitts in prior cases unrelated to Appellant's.]. On May 2, 2024, the Commonwealth filed a motion to dismiss. On July 23, 2024, the PCRA Court issued notice, pursuant to Pa.R.Crim.P. 907, of its intent to dismiss Appellant's Second Petition without a hearing ("907 Notice"). The PCRA court then dismissed Appellant's Second Petition on September 13, 2024.

Appellant has now appealed the PCRA Court's dismissal of his Second Petition, raising the following claim:

> [Appellant] claims that the PCRA Court erred in finding that [he] was not entitled to relief on his claim that the Commonwealth violated [Appellant's] rights under the Fourth, Fifth, and Fourteenth Amendments of the Pennsylvania and U.S. Constitutions when it failed to disclose ***Brady***[1] evidence related to Det. Pitts.

***See*** Appellant's 1925(b) Statement of Matters Complained of on Appeal. . . ("Statement of Errors").

Pa.R.A.P. 1925(a) Opinion, 11/06/24, at 1-3.

_____

[1] ***Brady v. Maryland***, 373 W.S. 83 (1963).

- 3 -

Appellant's brief reiterates his Rule 1925(b) statement as the sole issue raised on appeal. *See* Brief of Appellant, at 6. In support of this issue, Appellant sets forth the testimonies of eyewitnesses who, on the witness stand at Appellant's jury trial, recanted the prior incriminating statements that they had given to investigators, including Detective Pitts, during the investigation of the shootings in question. Appellant contends that such recantation testimonies would likely have been believed when viewed in conjunction with evidence of Detective Pitts's habit of employing coercive interview and interrogation techniques.[2]

_____

[2] This Court rejected an essentially identical argument offered in support of an after-discovered evidence claim raised by Appellant in his first PCRA appeal from the order dismissing his timely-filed, counseled first PCRA petition, which we discuss, *infra*. Specifically, this Court noted:

> Shelton claims that the PCRA court erred in denying his request for a new trial based upon after-discovered evidence of Detective Pitts's "judicially recognized pattern and habit of abusing witnesses."
> . . .
>
> Shelton argues that such evidence is not being used purely for impeachment purposes, but rather to establish Detective Pitts's pattern and practice of coercing witness statements. *Id*. Shelton claims that if the jury had known of Detective Pitts's pattern, then it would have rendered a not guilty verdict. *Id.* at 11-12.
> . . .
>
> Even if Shelton had preserved this claim for our review, the PCRA court addressed it as follows:
>
> > The record demonstrates ... that Detective Pitts was not involved in any interview of witnesses [ ] Quinones and

*(Footnote Continued Next Page)*

- 4 -

Tatiyana [ ], both of whom identified [Shelton] as the shooter from a photo array. [Shelton] has not offered any evidence of misconduct regarding any of the detectives who took the statements from these witnesses.

Moreover, while Detective Pitts was involved in taking two of Shantee['s] [ ] statements, Shantee [ ] did not implicate [Shelton] in either of those statements. While Shantee [ ] was preparing for trial with Detective [ ] Hammond on September 12, 2016, just days before trial commenced, she told Detective Hammond that Benjamin had told her that [Shelton] was one of the shooters. Detective Hammond then took a statement from Shantee [ ], which was presented to the jury at trial. Detective Pitts was not involved at all in that statement.

Finally, it is true that Detective Pitts, along with [his partner], took [ ] Benjamin's statement on July 28, 2014. In this statement, Benjamin implicated [Shelton] as one of the shooters. It is also true that at trial, Benjamin recanted his identification of [Shelton] and alleged that Detective Pitts coerced Benjamin into implicating [Shelton] as the shooter. Specifically, Benjamin alleged that Detective Pitts punched him repeatedly when he told the detectives [that] he did not know who was involved in the shooting. Benjamin further testified that the detectives told him that they were aware of multiple robberies [that Benjamin] had committed[,] and that if he gave them names of the shooters, then [Benjamin] would be free to go. Benjamin further stated that it was Detective Pitts who first suggested that [Shelton] was the shooter, and that Benjamin implicated [Shelton] so that he could go home to his family.

However, Benjamin gave a second statement to Detective [John] Harkins [("Detective Harkins")] and [his partner] on August 4, 2014, without Detective Pitts being present[. I]n [this statement] he confirmed that everything he had told detectives during his July 28, 2014, interview was accurate. During this interview, Benjamin did not complain of any misconduct on the part of Detective Pitts, and did

*(Footnote Continued Next Page)*

- 5 -

not claim that his first statement was inaccurate or coerced. Although Benjamin denied that this interview with Detective [ ] Harkins and [his partner] occurred, Detective Harkins directly contradicted that denial. Benjamin's denial of his interview with Detective Harkins and [his partner] is also contradicted by Benjamin's testimony at the preliminary hearing, in which he acknowledged that the interview [with Detective Harkins] took place. [Shelton] has proffered no evidence of any misconduct regarding Detective [ ] Harkins or [his partner].

Moreover, while Benjamin emphatically attempted to recant his statements to police[,] in which he implicated [Shelton] in the shooting, he also gave substantial testimony at trial that supported the Commonwealth's case. In particular, while [Benjamin] claimed that [Shelton] was not a shooter, he nevertheless identified [Shelton] as being present with another male at the time and place of the shooting. [Benjamin] also confirmed that he had told Shantee [ ] to tell the police that [Shelton] was involved with the shooting[,] ... corroborating Shantee['s] statement to Detective Hammond....

Accordingly, the findings in Judge Sarmina's unrelated case regarding Detective Pitts would not likely compel a different verdict if [Shelton] were granted a new trial. No relief is due.

PCRA Court Opinion, 9/16/20, at 5-7 (citations omitted).

Our review of the record confirms the PCRA court's findings, analysis, and conclusion. Moreover, the testimony at trial, coupled with the video surveillance, demonstrates that two men, one of which was Shelton, fired multiple rounds at the individuals on the porch, and into the house. *See* N.T. (Jury Trial Vol. 1, Day 2), 9/16/16, at 46-66 (wherein Detective Thorsten Lucke provided narration of the video surveillance depicting two individuals firing multiple rounds at the porch and house); *see also* N.T. (Jury Trial Vol. 1, Day 1), 9/15/16, at 155-57, 181-82, 185-86 (wherein Quinones testified that

*(Footnote Continued Next Page)*

When examining a post-conviction court's grant or denial of relief, this Court's review is limited to determining whether the PCRA court's findings are supported by the record and its order is otherwise free of legal error. ***Commonwealth v. Patterson***, 690 A.2d 250 (Pa. Super. 1997). The findings of the PCRA court will not be disturbed unless they lack support from the record. ***Commonwealth v. McClucas***, 548 A.2d 573 (Pa. Super. 1988). Additionally, we observe that "a PCRA petitioner is not automatically entitled to an evidentiary hearing. We review the PCRA court's decision dismissing a petition without a hearing for an abuse of discretion." ***Commonwealth v. Miller***, 102 A.3d 988, 992 (Pa. Super. 2014).

Before addressing Appellant's issue on appeal, we must determine whether his PCRA petition was timely filed and, if not, whether he has satisfied

---

both men were shooting at the house, and Quinones identified Shelton in a photo array as one of the shooters); N.T. (Jury Trial Vol. 2, Day 1), 9/17/16, at 183-92, 194-97, 205-10 (wherein Detective Harkins read the prior witness statements, identifying Shelton as one of the shooters, to the jury). Thus, Judge Sarmina's ruling in ***Thorpe*** would not have compelled a different verdict. ***See Ford***, ***supra***; ***see also Padillas***, ***supra***; ***Commonwealth v. Brown***, 52 A.3d 1139, 1170-71 (Pa. 2012) (stating that prior inconsistent statements are sufficient to support a conviction so long as the statements, taken as a whole, can establish every element beyond a reasonable doubt, and the finder of fact could have reasonably relied upon the statements in arriving at its decision).

***Shelton***, 253 A.3d 294 at *2, *3-4.

an exception to the PCRA time bar. Any PCRA petition "shall be filed within a year of the date judgment becomes final." 42 Pa.C.S.A. § 9545(b)(1). A judgment of sentence becomes final "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking review." *Id.* at 9545(b)(3). The PCRA's timeliness requirements are jurisdictional in nature, and a court may not address the merits of the issues raised if the PCRA petition was not timely filed. *Commonwealth v. Albrecht*, 994 A.2d 1091, 1093 (Pa. 2010). "Without jurisdiction, we simply do not have the legal authority to address the substantive claims." *Commonwealth v. Reeves*, 296 A.3d 1228, 1231 (Pa. Super. 2023) (quoting *Commonwealth v. Lewis*, 63 A.3d 1274, 1281 (Pa. Super. 2013)).

There is no dispute that Appellant's present PCRA petition, his second, is patently untimely. However, Pennsylvania courts may consider an untimely petition if the petitioner can explicitly plead and prove one of the three exceptions set forth at 42 Pa.C.S.A. §§ 9545(b)(1)(i)-(iii). Those three exceptions are as follows:

(i)     the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii)    the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii)      the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

*Id*. Any petition invoking one of these exceptions "shall be filed within one year of the date the claim could have been presented." *Id.* at § 9545(b)(2). "The PCRA petitioner bears the burden of proving the applicability of one of the exceptions." *Commonwealth v. Spotz*, 171 A.3d 675, 678 (Pa. 2017).

Here, Appellant presents his *Brady* claim as qualifying for both the newly discovered fact and the government interference time-bar exceptions under Section 9545(b)(1)(i) and (ii), respectively. *See* Brief for Appellant, at 16. We disagree.

Regarding Section 9545(b)(1)(ii), we have recently acknowledged:

"The newly-discovered facts exception [ ] does not require any merits analysis of the underlying claim, and application of the time-bar exception, therefore, does not necessitate proof of the elements of a claim of after-discovered evidence." *Commonwealth v. Small*, 238 A.3d 1267, 1286 (Pa. 2020) (original quotation marks omitted) (noting that, the newly-discovered facts exception to the jurisdictional time-bar is distinct from an after-discovered evidence claim, which is a substantive basis for relief pursuant to 42 Pa.C.S.A. § 9543(a)(2)(iv)); *see also Commonwealth v. Fears*, 250 A.3d 1180, 1189 (Pa. 2021) (stating, an analysis pertaining to whether a petitioner has sufficiently pleaded and proven the newly-discovered facts exception to the jurisdictional time-bar prohibits a merits analysis of the underlying claim). For purposes of the newly-discovered facts exception, a determination that the facts were unknown to the petitioner is circumstance-dependent and requires an analysis of the petitioner's knowledge. *Small*, 238 A.3d at 1283.

*Commonwealth v. Branthafer*, 315 A.3d 113, 128 (Pa. Super. 2024) (brackets omitted; some citations modified).

Incumbent on the petitioner is the obligation to,

> demonstrate **he did not know the facts upon which he based his petition and could not have learned those facts earlier** by the exercise of due diligence.... Additionally, the focus of this exception is on the newly discovered facts, not on a newly discovered or newly willing source for previously known facts.
>
> As an initial jurisdictional threshold, Section 9545(b)(1)(ii) requires a petitioner to allege and prove that there were facts unknown to him and that he exercised due diligence in discovering those facts. *See* 42 Pa.C.S.A. § 9545(b)(1)(ii). Once jurisdiction is established, a PCRA petitioner can present a substantive after-discovered-evidence claim. *See* 42 Pa.C.S.A. § 9543(a)(2)(vi) ....

*Reeves*, 296 A.3d at 1232 (brackets omitted; emphasis added).

*Commonwealth v. Brown*, No. 1766 EDA 2024, 2025 WL 848842, at *4-5 (non-precedential decision) (Pa. Super. filed Mar. 18, 2025).[3] It is well-settled that a petitioner must first satisfy the requirements of a time bar exception, such as the newly discovered fact provision of the PCRA, before they may gain merits review of a *Brady* claim raised in a facially untimely petition. *Id*.

Important for present purposes is this Court's well-settled interpretation of Section 9545(b)(1)(ii) as mandating that "the 'fact' on which the petitioner

---

[3] Non-precedential decisions filed after May 1, 2019, may be cited for their persuasive value. *See* Pa.R.A.P. 126(b)(1)-(2).

predicates his claim to an exception to the time-bar must bear some logical connection to a plausible claim for relief." **Commonwealth v. Myers**, 303 A.3d 118, 122 (Pa. Super. 2023) (emphasis added) (citing **Commonwealth v. Robinson**, 185 A.3d 1055, 1062 (Pa. Super. 2018) (*en banc*)).

In the case *sub judice*, Appellant's newly discovered facts[4] claim and his government interference claim rely on the same underlying facts, namely, the Commonwealth's purported failure to disclose findings made and conclusions reached in the internal investigation of former Detective Pitts confirming he routinely used coercive and abusive means during his career to obtain statements in investigations and interrogations.[5]  We find persuasive a recent

---

[4] Appellant indicates he seeks relief based upon "newly discovered *evidence*." **See** Brief of Appellant, at 16 (emphasis added).

[5] Notably, in Appellant's **Brady** claim, in which he asserts the Commonwealth failed to disclose the detective's misconduct history to the deprivation of his due process rights, he includes publicly available sources of such information, such as a 2018 judicial opinion of the Court of Common Pleas of Philadelphia County, **Commonwealth v. Thorpe**, (CP-51—CR-0011433-2008) (filed 6/7/18) and other court orders and decisions filed of public record prior to the submission of his counseled amended first PCRA petition and subsequent proceedings.  **See** Brief of Appellant, at 17-19.  Indeed, as discussed *supra*, this Court reviewed Appellant's counseled appeal from the order denying relief on his first PCRA petition, and though we deemed his appeal waived for an inadequately developed brief, we alternatively conducted merits review of his after-discovered evidence claim with reference to the record, notes of testimony, and the PCRA court opinion.  In affirming, we concluded that the evidence concerning Detective Pitts's coercive and abusive interrogation methods in other cases would not have compelled a different verdict when viewed against the great weight of evidence presented against Appellant at trial, which included incriminating testimony and video surveillance evidence demonstrating that two men, one of which was Shelton, fired multiple rounds at the individuals on the porch, and into the house.  **Commonwealth v.**
*(Footnote Continued Next Page)*

decision of this Court that rejected virtually identical **Brady**-based government interference and newly discovered fact claims deriving from investigations into Detective Pitts's methods employed in other, unrelated cases.

In **Brown**, petitioner Brown filed *pro se* a facially untimely first PCRA petition raising, *inter alia*, both a newly discovered fact claim referencing a newspaper article dated July 28, 2023, that reported on the findings and conclusions of an internal investigation into Detective Pitts—who worked on the investigation of Brown—and a corresponding **Brady** claim charging the Commonwealth with failing to disclose to the defense Detective Pitts's verified history of misconduct. Brown's counseled amended PCRA petition "alleged numerous additional instances of misconduct by Detective Pitts in other, unrelated criminal cases" and asserted that "at least 10 cases tied to [Detective] Pitts have been dropped, dismissed, or overturned over the years[, reaching back to 2017,] and petitions alleging coercion remain pending in a number of others." **Id.** at *2.

The Commonwealth responded by acknowledging the findings made against former Detective Pitts during his tenure with the Philadelphia Police Department and conceding that, more recently, he had been indicted for perjury. **Id.** at *3. Nevertheless, the Commonwealth maintained that petitioner Brown was not entitled to a hearing because he failed to prove

_____

**Shelton**, 253 A.3d 294 at **3-4 (non-precedential decision) (Pa. Super. filed April 19, 2021).

- 12 -

prejudice, that is, that such findings, if submitted as evidence, would likely result in a different verdict in his case. *Id*.

The PCRA court dismissed Brown's patently untimely petition pursuant to Pa.R.Crim.P. 907 upon finding that he could not prevail under a PCRA time-bar exception where the information was publicly available since 2017 and where Brown's claim of the detective's misconduct in his own case was known to him before trial and could have been used to impeach the detective's credibility as a witness.

On appeal to this Court, Brown raised a single issue contending the PCRA court erred by failing to consider "newly-discovered evidence [sic] of a horrendous history of misconduct by Detective [] Pitts, which was not disclosed by the Commonwealth to [Brown] before [t]rial, either willfully or negligently, in violation of *Brady*[.]" *Id.* at *3. Brown maintained such evidence was relevant to his case because Detective Pitts's "habitual pattern of egregious police misconduct" in other cases "evidenced his lack of proper training and inexperience as a homicide investigator[,]" and he argued that "evidence of Detective Pitts's inadequate training and police misconduct was probative and material regarding deficiencies in the police investigation of [Brown] relevant [to] the issue of reasonable doubt[.]" *Id.* at *4.

We rejected Brown's appeal because he could not show that the findings of fact and conclusions made from investigations into Detective Pitts's conduct in unrelated cases bore on his case. We observed,

> "**newspaper articles referencing misconduct** [**by police**] **in matters unrelated to** [**the petitioner**] **do not constitute newly-discovered facts.**" [*Commonwealth v.*] *Reeves*, [296 A.3d 1228,] 1233 (emphasis added).
>
> "Further, the 'fact' on which the petitioner predicates his claim to an exception to the time-bar **must bear some logical connection to a plausible claim for relief**." *Commonwealth v. Myers*, 303 A.3d 118, 122 (Pa. Super. 2023) (emphasis added) (citing *Commonwealth v. Robinson*, 185 A.3d 1055, 1062 (Pa. Super. 2018) (*en banc*)).
>
> Instantly, Appellant claims that a newspaper article alerted him to newly-discovered facts excepting his PCRA petition from the PCRA's jurisdictional time-bar. *See Pro Se* PCRA Petition, 11/28/23, at 5; Appellant's Brief at 24. However, as the newspaper article undisputedly did not pertain to Appellant's case, it does not constitute a newly-discovered fact that would rescue his request for PCRA relief from the PCRA's time-bar. *See Reeves*, 296 A.3d at 1233; *see also Commonwealth v. Daniels*, 240 A.3d 127, 3005 EDA 2019 (Pa. Super. 2020) (unpublished memorandum at 10)[] (reviewing a PCRA appeal that alleged the disclosure of Detective Pitts's misconduct constituted newly-discovered facts and concluding that because the new facts did not pertain to Daniels' case, they did "not provide a factual basis for any claim Daniels could make." (citing *Commonwealth v. Brown*, 134 A.3d 1097, 1109 (Pa. Super. 2016) (concluding that a new trial was not warranted where the evidence concerning Detective Pitts did not relate to the case at bar)).
>
> Here, as in *Reeves*, Appellant "cites no new information in **his** case." *Reeves*, 296 A.3d at 1233 (emphasis in original). Accordingly, this Court is without jurisdiction to consider the substance of Appellant's claim, *Reeves*, 296 A.3d at 1231, and the PCRA court did not abuse its discretion in denying Appellant's PCRA petition without a hearing. *See* [*Commonwealth v.*] *Miller*, 102 A.3d [988,] 992 [Pa. Super. 2014)].

*Brown*, at *5 (emphasis in original).

As in *Reeves*, *Daniels*, and *Brown*, we are confronted with an appellant who "cites no new information in **his** case." *See Brown*, at *5

(quoting **Reeves**). It follows, therefore, that just as the petitioners in **Reeves**, **Daniels**, and **Brown** could not avail themselves of a PCRA time-bar exception by relying on citations to credible reports of Detective Pitts's improper conduct in other unrelated cases, so too is Appellant precluded for his failure to present a "new fact" pertinent *to his own case*, as he has submitted information of Detective Pitts's misconduct in other, unrelated cases only. Guided by persuasive and germane decisional law, therefore, we discern no error below. Accordingly, we deny Appellant's request for relief.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/2/2025